STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0486

ROSEHILL CONSTRUCTION, LLC

VERSUS

TED HEBERT, LLC

Judgment Rendered: **NOV 2 8 2022**

* * * * *

APPEALED FROM THE NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER C676846

HONORABLE DONALD R. JOHNSON, JUDGE PRESIDING

* * * * *

T. Michael Murphy                    Counsel for Defendant/
G. Steven Duplechain                 Third-Party Plaintiff/Appellant
Larry Bankston                       Ted Hebert, LLC
Baton Rouge, Louisiana

Anderson O. "Andy" Dotson, III       Counsel for Third-Party Defendants/
Parish Attorney                      Appellees
Michael P. Schillage                 City of Baton Rouge/Parish of East
Assistant Parish Attorney            Baton Rouge and Nathan Cobb
Baton Rouge, Louisiana

* * * * *

BEFORE: McDONALD, McCLENDON, AND HOLDRIDGE, JJ.

**McDONALD, J.**

This is an appeal from a district court judgment granting a motion for summary judgment and denying a motion for partial summary judgment. After review, we affirm.

## FACTS AND PROCEDURAL HISTORY

The history of this case is convoluted. Rosehill Construction, LLC (Rosehill) was the general contractor on a construction project for the Cube Smart Storage Project located at 4647 Burbank Drive in Baton Rouge, Louisiana. Rosehill entered into a subcontract with Ted Hebert, LLC (Hebert) for sewer-related work on the project for a lump sum of $221,300.00. On November 30, 2018, Rosehill filed suit against Hebert, maintaining that Hebert's work on the project failed to pass City of Baton Rouge/East Baton Rouge Parish (City Parish) inspections on three occasions, and after notice and opportunity to cure the defects, Hebert failed to do so and the contract was terminated. Rosehill averred that it hired Hendrick Construction, Inc., to replace and complete Hebert's work. Rosehill maintained that Hebert was negligent and breached its contract and that Hebert was liable to it for damages and attorney fees.

Hebert filed an answer, raised affirmative defenses, and asserted claims for breach of contract in a reconventional demand. Hebert also filed a third-party demand, naming as third-party defendants the City Parish, Nathan Cobb (the City Parish Engineer III who oversaw the CCTV inspections) and Stantec Consulting Services, Inc. (Stantec).[1] Rosehill filed a motion for partial summary judgment and also filed an answer to Hebert's reconventional demand.[2] The City Parish, Mr. Cobb, and Stantec filed answers to the third-party-demand.

---

[1] In responses to interrogatories, Hebert stated that its claims against the City Parish and Mr. Cobb was a "pass through" claim, and that to the extent Hebert was found liable to Rosehill, Hebert sought to have Rosehill's damages assessed to the City Parish and Mr. Cobb.

[2] Rosehill's motion for partial summary judgment was not found in the record before us.

On September 30, 2021, the City Parish and Mr. Cobb filed a motion for summary judgment seeking dismissal of Hebert's claims with prejudice, maintaining that there were no genuine issues of material fact that substantiated Hebert's claim against the City Parish or Mr. Cobb. In its motion for summary judgment, the City Parish and Mr. Cobb maintained that: (1) Hebert contractually bound itself with Rosehill to perform its work in compliance with the City Parish camera inspections as outlined by the sag tolerance table contained within Standard Plan 802-01; (2) the pipe laid by Hebert, containing crushed portions, separated and detached joints, and sags twenty-five percent over the tolerance level across the pipeline, would not have passed any inspection method; (3) the City Parish and Mr. Cobb were entitled to qualified immunity for performing their official duties as City Parish public works employees; and (4) Hebert had no standing to assert a "pass through" claim against the City Parish regarding the Cube Smart Project because the City Parish was not an owner of the Project and Rosehill was the proper party to assert that claim.

On November 17, 2021, Hebert filed a motion for partial summary judgment against the City Parish,[3] asking the district court to rule that "the Metro Council and UDC [Unified Development Code]'s delegation of authority to the Department of Public Works to (1) establish the sag standard for sewer pipe in East Baton Rouge Parish and (2) implement CCTV camera inspections to test sewers for compliance with that sag standard was illegal and/or unconstitutional." On December 17, 2021, the City Parish and Mr. Cobb filed an opposition to Hebert's motion for partial summary judgment.

On December 13, 2021, the district court signed a judgment denying Rosehill's motion for partial summary judgment and adopting Hebert's findings of fact and conclusions of law as its written reasons for judgment. In the written reasons for judgment, the district court found that the City Parish did not have the

---

[3] Mr. Cobb was not named in Hebert's motion for partial summary judgment.

3

authority to implement its sewer sag standard and CCTV sewer inspection policy. On December 17, 2021, Hebert filed its opposition to the City Parish and Mr. Cobb's motion for summary judgment. On December 13, 2021, Rosehill filed a motion for reconsideration of the denial of its motion for partial summary judgment.[4] On December 30, 2021, the City Parish and Mr. Cobb filed their answer to Hebert's supplemental and amended third-party demand.

On January 3, 2022, a hearing was held on the motion for partial summary judgment filed by Hebert and the motion for summary judgment filed by the City Parish and Mr. Cobb. On February 3, 2022, the district court signed a judgment granting the City Parish and Mr. Cobb's motion for summary judgment[5] and denying Hebert's motion for partial summary judgment. However, that judgment did not dismiss Hebert's claims against the City Parish and Mr. Cobb. The district court adopted the City Parish and Mr. Cobb's findings of fact and conclusions of law as its written reasons for judgment. The reasons for judgment by the district court concluded that the City Parish had the authority to implement its sewer sag standard and CCTV sewer inspection policy, and that the City Parish and Mr. Cobb had qualified immunity pursuant to La. R.S. 9:2798.1.

On February 22, 2022, the district court granted Rosehill's motion for reconsideration and vacated its December 13, 2021 judgment. On March 16, 2022, Hebert filed a motion for an appeal from the February 3, 2022 judgment granting the

___

[4] The Louisiana Code of Civil Procedure does not provide for a motion for reconsideration with respect to any judgment; instead, such a motion is generally treated as a motion for new trial. **Lexington Land Development, L.L.C. v. Chevron Pipeline Co.**, 2020-0622 (La. App. 1 Cir. 5/25/21), 327 So.3d 8, 17, writ denied, 2021-01194 (La. 11/17/21), 327 So.3d 966. A motion for new trial can be taken from a final judgment. The denial of a motion for summary judgment is not a final judgment. The denial of a motion for summary judgment is reviewable by supervisory writ. **Allstate Ins. Co. v. Mohamadian**, 2009-1126 (La. App. 1 Cir. 2/17/10), 35 So.3d 1118, 1121. Thus, if Rosehill and Mr. Cobb sought review of the denial of their motion for summary judgment, they should have filed for supervisory writs. See **Allstate Ins. Co.**, 35 So.3d at 1121.

[5] The trial court's earlier ruling denying Rosehill's motion for partial summary judgment, and finding in its reasons for judgment that the City Parish did not have the authority to implement its sewer sag standard and CCTV sewer inspection policies, was an interlocutory ruling; therefore, the trial court could later change its mind and grant the motion for summary judgment in favor of the City Parish and Mr. Cobb, finding that the City Parish did have the authority to implement its sewer sag standard and CCTV sewer inspection policies. See La. C.C.P. art. 1841.

4

City Parish and Mr. Cobb's motion for summary judgment and denying Hebert's motion for partial summary judgment.

This court issued an interim order on August 4, 2022, to the district court to issue an amended judgment in accordance with La. C.C.P. art. 1951 to correct deficiencies in the February 3, 2022 judgment. On August 10, 2022, the district court signed an amended judgment granting the summary judgment filed by the City Parish and Mr. Cobb and dismissing all claims against them with prejudice. Further, the judgment denied Hebert's motion for partial summary judgment. Hebert appealed that judgment.

## STANDARD OF REVIEW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. **Schultz v. Guoth,** 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1005-1006.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

5

## ASSIGNMENTS OF ERROR

Hebert makes four assignments of error on appeal. First, it maintains that the trial court erred in considering new arguments not made in the original motion for summary judgment, but first raised by the City Parish and Mr. Cobb in their reply memorandum. Second, Hebert maintains that the trial court erred in finding that the City Parish had the authority to implement the sewer sag standard and the CCTV sewer inspection policy without any formal adoption of the standard and inspection policy by the Metro Council. Third, it maintains that the trial court erred in finding that the City Parish and Mr. Cobb were immune from civil liability. Fourth, Hebert maintains that the trial court erred in adopting all of the findings of fact and conclusions of law first raised in a reply memorandum in its written reasons for judgment.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, Hebert maintains that the trial court erred in considering new arguments not made in the original motion for summary judgment but first raised by the City Parish and Mr. Cobb in their reply memorandum.

Hebert cites **Melton v. Horton**, 10-496 (La. App. 5 Cir. 12/14/10), 55 So.3d 897 and **Wilson v. Two SD, LLC**, 2015-0477 (La. App. 1 Cir. 12/23/15), 186 So.3d 159, writ denied, 2016-0306 (La. 4/8/16), 191 So.3d 588, as support for its position that new substantive arguments contained in reply memorandum should be considered as a new motion for summary judgment.

In **Melton**, this court reversed the grant of a motion for partial summary judgment finding that mover initially sought dismissal of the plaintiff's claim against a co-defendant via partial summary judgment, but later sought new relief in the form of dismissal of plaintiff's claims against the movant for the first time via its reply memorandum in support of the motion for summary judgment. **Melton**, 55 So.3d at

901. The district court had also dismissed the plaintiff's separate and subsequent personal injury claim added to the case via amended petition that was not addressed by the movant through its motion or brief. **Melton**, 55 So.3d at 901-902.

In **Wilson**, the movant, an insurance carrier, sought summary judgment on the basis that its policy did not provide coverage for the plaintiffs' claims because the damage did not manifest during the policy period. **Wilson**, 186 So.3d at 160. The movant, in its reply memorandum, for the first time asserted that work product exclusions were additional reasons to grant the summary judgment. The district court granted summary judgment dismissing all claims against the insurance carrier, finding that the work product exclusions precluded coverage. **Wilson**, 186 So.3d at 161. This court reversed the district court, finding that the motion did not directly or indirectly assert that the issues under consideration included whether the work product exclusions applied to the claims of the plaintiffs. **Wilson**, 186 So.3d at 162.

Unlike **Melton** and **Wilson**, herein the City Parish and Mr. Cobb sought summary judgment against all claims raised against them by Hebert and all of the issues pertinent to the claims were addressed by the City Parish and Mr. Cobb's memorandum and evidence submitted in support of the motion. The City Parish and Mr. Cobb's memorandum in support of its motion for summary judgment notes, in part, that Mr. Cobb had the authority to use camera inspections, that Mr. Cobb merely executed directives from his department officials, and that both the City Parish and Mr. Cobb had qualified immunity for such actions. Further, the City Parish and Mr. Cobb stated that Hebert was contractually bound to pass the City Parish's camera inspections for the project, as Hebert's contract with Rosehill required it to pass camera inspections and comply with all City Parish standards and specifications, including City Parish Standard Plan No. 802-01, which outlines sag tolerance levels, which were applicable only to camera inspections.

7

The City Parish and Mr. Cobb's memorandum in support of their motion for summary judgment maintained that Hebert had to perform its own acceptance tests prior to seeking final acceptance of its work in accordance with Section 802 of the City Parish's Standard Specifications, and pass the City Parish's final inspection per the UDC Section 4.102(G). Further, the City Parish and Mr. Cobb asserted that as part of Hebert's obligation to pass final inspection, the City Parish highlighted its own use of camera inspections for final inspection by adding the Sanitary Sewer Grade Tolerance/Acceptable Sag Limits table to Standard Plan No. 802-01 in June 2017, and that there was no other testing mechanism for sanitary sewer pipe that involves tolerance or sag limits.

After review, we find no merit to the contention that the district court relied upon new arguments made in a reply memorandum rather than the arguments raised in the original memorandum in granting the City Parish and Mr. Cobb's motion for summary judgment.

### ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, Hebert maintains that the trial court erred in finding that the City Parish had the authority to implement the sewer sag standard and the CCTV sewer inspection policy without any formal adoption of the standard and inspection policy by the Metro Council.

In response, City Parish and Mr. Cobb maintain that the City Parish Plan of Government and the UDC set forth the parameters of the duties for each City Parish department and the authority vested in the department directors and chiefs. They note that Exhibit E attached to their motion for summary judgment included the deposition testimony of Adam Smith, Interim Director of the City Parish Department of Environmental Services, and Mr. Cobb, as well as the City Parish's Standard Specification 802, the City Parish UDC Section 4, the City Parish Plan of Government Section 5, and the project's Subdivision Permit issued to Hebert.

8

Hebert cites **Krielow v. Louisiana Dept. of Agriculture and Forestry**, 2013-1106 (La. 10/15/13), 125 So.3d 384, **Schwegmann Bros. Giant Super Markets v. McCrory**, 112 So.2d 606 (La. 1959), and **Mid-City Automotive, L.L.C. v. Dept. of Pub. Safety & Corrections**, 2018-0056 (La. App. 1 Cir. 11/7/18), 267 So.3d 165 as support for its arguments.

In **Krielow**, rice producers challenged the constitutionality of statutes that obligated them to pay an assessment on rice produced in Louisiana. The assessment would not be imposed unless the rice producers approved it by majority vote. The assessment was found unconstitutional in part by the trial court. **Krielow**, 125 So.3d at 386-387. The supreme court amended and affirmed as amended, finding the statutes unconstitutional in their entirety. **Krielow**, 125 So.3d at 398. In **Schwegmann**, a milk retailer sought an injunction against the Commission of Agriculture and Immigration restraining enforcement of provisions of the Orderly Milk Marketing Act and attacking its constitutionality on various grounds. **Schwegmann**, 112 So.2d at 607. The trial court found the Act was constitutional, and the supreme court affirmed. **Schwegmann**, 112 So.2d at 619. In **Mid-City Automotive, L.L.C.**, a towing company filed suit for declaratory and injunctive relief alleging provisions of the Louisiana Administrative Code were invalid and requesting an injunction against further fines, suspensions, and revocations under those provisions. The district court ruled against the towing company and dismissed the suit. **Mid-City Automotive, L.L.C.**, 267 So.3d at 168-169. On appeal, this court found the provisions unconstitutional, and reversed in part and rendered, and vacated in part and remanded for further proceedings. **Mid-City Automotive, L.L.C.**, 267 So.3d at 178.

We do not find these cases to be analogous to the case before us. Chapter 4, Section 4.102, Part G(1)(b) of the UDC provides that the Department of Public Works "shall check the visual appearance of curbs and medians, street pavements,

9

and sidewalks, and shall reserve the right to perform general inspections of the following: (1) Excavations; (2) Subsurface drainage; (3) Inlets, junctions, and manholes; (4) Sanitary sewer collection lines; (5) Sanitary sewer manholes; (6) Public sanitary treatment sewage treatment facilities; (7) Sanitary sewage lift stations/pump stations . . . . (13) Manufacture and installation of all drainage and sanitary sewer pipe." It further states that "The Department of Public Works shall notify the applicant's appropriate licensed design professional of record of any defects in materials or workmanship, failed independent quality assurance tests, any noncompliance with the required DPW standards based on general inspection, or any discrepancy found between field observations and the approved construction plans." The Interim Director of the Department of Environmental Services for the City Parish, Adam Smith, testified in his deposition that it was his decision to implement CCTV inspections, which were allowed under Chapter 4 of the UDC. He testified that Section 802 of the City Parish specifications, sometimes referred to as the master specifications, outlines what types of inspections can be performed by contractors, but not what kind of inspections can be performed by the City Parish. Smith testified that the UDC states that the City Parish is to inspect the sewer visually, among other things, but it does not get into specifics.

Mr. Smith testified that another way to identify a sag in a pipe is with a lamp test, which utilizes a light in one manhole and looking in the other manhole to see if the shape was circular, which meant the pipe didn't have sags and wasn't crushed. However, he testified that the CCTV was a better test, because it also revealed other defects, such as separated joints, a rolled gasket, or an issue at the service line. He noted that more comprehensive testing meant better pipes, with less maintenance costs for the sewer pipe for the City Parish. Mr. Smith testified that after video or CCTV testing, if necessary, an AMP test would follow. The AMP test would give more information as to what the problem was.

After review, we find no genuine issue of material fact that the UDC provides the City Parish Department of Public Works the authority to inspect the sewer pipes and afforded the Department of Works director the authority to choose the methods of inspection, which included the authority to implement the sewer sag standard and the CCTV sewer inspection policy. This assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In assignment of error number three, Hebert maintains that the trial court erred in finding that the City Parish and Mr. Cobb were immune from civil liability.

Louisiana Revised Statutes 9:2798.1 provides:

A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

Louisiana Revised Statutes 9:2798.1 exempts public entities from liability for their employees' discretionary or policy-making acts. Specifically, under La. R.S. 9:2798.1, public entities and their officers and employees are immune from tort claims based on their policy-making decisions or discretionary acts carried out

11

within the course and scope of their employment. **Aucoin v. Larpenter**, 2020-0792 (La. App. 1 Cir. 4/16/21), 324 So.3d 626, 636-637, writ denied, 2021-00688 (La. 9/27/21), 324 So.3d 87. The Louisiana Supreme Court has devised a two-step test to determine whether a public entity is entitled to immunity under Section 9:2798.1B. First, if a statute, regulation, or policy prescribes a particular course of action, there is no choice or discretion involved, and the immunity does not apply. However, when discretion is involved, the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy. Section 9:2798.1 protects the government from liability only at the policy making or ministerial level, not at the operational level. **Doe v. ABC School**, 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So.3d 1086, 1099, writ denied, 2021-00098 (La. 3/9/21), 312 So.3d 582.

The City Parish Plan of Government sets forth the duties of the departments of the City Parish. The UCD establishes the Department of Environmental Service's authority to determine how the City Parish will inspect the public sewer pipelines. The DPW permit for the project required that the work be performed in accordance with the current City Parish standard specifications and UDC requirements as well as the approved construction plans and East Baton Rouge Parish code ordinances. Interim Director Smith chose to use CCTV inspection to be measured against the sag tolerance table contained within the City Parish's Plan Sheet 802-01 which was made a part of the project. Interim Director Smith also utilized Accurate Mapping Probe (AMP) as a follow up inspection to confirm the CCTV inspection results as needed. Interim Director Smith used his discretion to determine which type of testing would be done to inspect public sewer pipelines, and directed Mr. Cobb, and Engineer III, to oversee the day to day process of inspections.

Mr. Hebert maintains that Mr. Cobb was not certified or trained to review CCTV camera footage and make decisions based on the CCTV results. However,

12

Hebert's expert, Murray L. McCullough, P.E., testified in his deposition that licensed civil engineers such as Mr. Cobb do not need to be trained or certified beyond their experience in sewer pipe work to review CCTV camera footage and make decisions about the footage.

After review, we find no genuine issue of material fact that the City Parish and Mr. Cobb are immune from civil liability for their discretionary or policy-making acts in determining how the City Parish will inspect public sewer pipelines and implementing those inspections. This assignment of error has no merit.

## CONCLUSION

After *de novo* review, we determine that the district court judgment correctly granted the motion for summary judgment filed by the City Parish and Mr. Cobb, dismissed all claims against them, and denied the motion for partial summary judgment filed by Hebert.[6] Thus, the judgment is affirmed. Costs of this appeal are assessed against Ted Hebert, LLC.

**AFFIRMED.**

---

[6] In assignment of error number four, Hebert maintains that the trial court erred in adopting all of the findings of fact and conclusions of law first raised in a reply memorandum in its written reasons for judgment. Appellate courts review judgments, not reasons for judgment. Further, judgments are often upheld on appeal for reasons different than those assigned by the trial court. **Wooley v. Lucksinger,** 2009-0571 (La. 4/1/11), 61 So.3d 507, 572. Because we have determined the judgment correctly granted the motion for summary judgment filed by the City Parish and Mr. Cobb, dismissed all claims against them, and denied the motion for partial summary judgment filed by Hebert, we pretermit this assignment of error.

13

| ROSEHILL CONSTRUCTION, LLC | STATE OF LOUISIANA |
|---|---|
| VERSUS | COURT OF APPEAL |
| TED HEBERT, LLC | FIRST CIRCUIT |
| | 2022 CA 0486 |



**HOLDRIDGE, J., dissenting.**

I respectfully dissent. I disagree with that part of the majority opinion that affirms the trial court's finding that the City-Parish and Mr. Cobb were immune from liability. There are genuine issues of material fact and a question of law as to whether La. R.S. 9:2798.1 provides immunity from liability for the City-Parish and Mr. Cobb. Louisiana Revised Statutes 9:2798.1 only protects the government and governmental employees from liability "at the policy making or ministerial level, not at the operational level." **Doe v. ABC School**, 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So.3d 1086, 1099, writ denied, 2021-00098 (La. 3/9/21), 312 So.3d 582. There is a question as to whether the actions of Mr. Cobb were ministerial or operational that precludes the granting of a motion for summary judgment.

I write further to state that a motion to reconsider may be used to ask the trial court to reconsider, vacate, or revise a prior interlocutory order or partial judgment that has not been certified under La. C.C.P. art. 1915 (B)(2). See, e.g., **Zapata v. Seal**, 2020-01148 (La. 9/30/21), 330 So.3d 175, 179. However, if a court denies a motion for summary judgment, a party may only take a supervisory writ to allow the appellate court to grant the motion. A party cannot file a motion to reconsider a denial of a summary judgment but must file a new or re-urged summary judgment motion that complies with all of the requirements of La. C.C.P. art. 966. See **Magallanes v. Norfolk Southern Railway Co.**, 2009-0605 (La. App. 4 Cir. 10/14/09), 23 So.3d 985, 988.